**Gunther GRAEFENHAIN, Philip Miller and Robert E. Loucks, Plaintiffs,**

v.

**PABST BREWING COMPANY, Defendant.**

No. 83–C–1670.

United States District Court, E.D. Wisconsin.

Nov. 2, 1985.

697

Frank Schiro, Milwaukee, Wis., for plaintiffs.

Michael, Best & Friedrich by John Sapp, John Busch, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiffs brought this action under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* The liability issues were tried to a jury; the damage issues were tried separately to the court. The jury returned a special verdict finding that the defendant, Pabst Brewing Company (Pabst), willfully discriminated against plaintiffs Gunther Graefenhain and Philip Miller by terminating them on the basis of age. At the time of their termination, Mr. Graefenhain was 47 years old and Mr. Miller was 62 years old. The jury also found that Pabst did not terminate plaintiff Robert Loucks because of his age. On March 11, 1985, the court entered judgment in the case and issued a decision and order on the damage issues. Mr. Graefenhain was awarded nominal damages of $1.00. Mr. Miller was awarded $28,291.00

in liquidated damages and Pabst was ordered to reinstate him to his former position or a comparable one. In the event Mr. Miller refused reinstatement, Pabst was ordered to pay him damages of $56,582.00—$28,291.00 for his lost pension benefits and a like amount as liquidated damages.

Pabst has moved for judgment notwithstanding the verdict pursuant to Rule 50(b), Federal Rules of Civil Procedure, contesting the jury's findings that the company willfully discriminated against Mr. Graefenhain and Mr. Miller on the basis of age. Plaintiffs Graefenhain and Miller have moved to amend the judgment to award them front pay damages, pursuant to Federal Rule of Civil Procedure 59(e). They also have moved the court to fix a supersedeas bond or, alternatively, to order the judgment placed in an escrow account. The defendant's motion for judgment notwithstanding the verdict will be granted. The plaintiffs' motions will be dismissed as moot.

In support of its motion for judgment, Pabst contends that no reasonable jury could have found that Mr. Graefenhain and Mr. Miller were terminated because of their age or, alternatively, that no reasonable jury could have found that the discrimination was willful. In deciding a motion for judgment, the court must consider whether the evidence presented, combined with all reasonable inferences that can be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the prevailing party. *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 153 (7th Cir.1981). It is not the court's role to judge the credibility of the witnesses or to reweigh the evidence to find a preponderance on one side or the other. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir.1984). The court, nonetheless, will consider whether the evidence to support the verdict is substantial; "a mere scintilla of evidence will not suffice." *Id.*

■ The plaintiff in an age discrimination case has the burden of proving that he was discriminated against in employment because of his age. *Golumb v. Prudential Ins. Co. of America*, 688 F.2d 547, 550 (7th Cir.1982). To do so, he need not prove that age was the sole factor motivating the employer to terminate him but that age was a determining factor in the sense that "but for" the discrimination he would not have been terminated. *La Montagne, supra,* 750 F.2d at 1409.

■ The plaintiff may attempt to meet this burden directly, by presenting direct or circumstantial evidence of discriminatory motive, or indirectly. Courts have generally employed modified versions of the formula set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to cases involving indirect proof of age discrimination. *See Huhn v. Koehring,* 718 F.2d 239, 243 (7th Cir.1983); *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1222 (7th Cir. 1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

■ In this circuit, a plaintiff claiming that he was terminated from his job because of his age must first prove a prima facie case of discrimination by showing that: (1) he was in the protected age class; (2) he was performing his job well enough to meet his employer's legitimate expectations; (3) he was discharged despite his performance; and (4) the employer sought to replace him with a younger person. *La Montagne, supra,* 750 F.2d at 1409. If the plaintiff establishes a prima facie case, the defendant then has the burden of articulating legitimate, nondiscriminatory reasons for the termination. *Id.* The defendant's burden is one of production only; the burden of persuasion remains with the plaintiff throughout the case. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the defendant satisfies its burden, then the plaintiff must prove that the reasons articulated by the defendant were a pretext, or cover-up, and were not its true reasons; this can be done by the plaintiff's showing either that a discriminatory reason more likely than not motivated the defendant or that the rea-

sons offered by the defendant are not worthy of credence. *La Montagne, supra,* 750 F.2d at 1409. The indirect method of proof, which allows the plaintiff to prove his case by eliminating all lawful motivations rather than directly proving a discriminatory motivation, recognizes that age discrimination may be subtle and often very difficult to prove. *Id.* at 1409–10.

The plaintiffs claim that they intended to employ both the direct and indirect methods of proving age discrimination. In their proposed jury instructions, however, they included instructions only on the indirect method. In any case, if no reasonable jury could have found age discrimination under the indirect method, they certainly could not have found for the plaintiffs under the direct method.

The defendant first argues that neither Mr. Graefenhain nor Mr. Miller established his prima facie case because neither plaintiff proved that he was meeting Pabst's legitimate expectations when he was terminated. In *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983), the Supreme Court, applying the *McDonnell Douglas* test in a Title VII action, observed that the prima facie threshold is no longer a relevant issue once the defendant has proffered legitimate, nondiscriminatory reasons for its actions that would rebut the prima facie showing. *See also Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 135 (7th Cir.1985). The only relevant issue in this situation is whether sufficient evidence is presented from which the trier of fact could find that the defendant intentionally discriminated against the plaintiff. *Id.*

In the present case, the defendant offered legitimate reasons for terminating the plaintiffs after its motion for a directed verdict at the close of the plaintiffs' case was denied by the court. Because this evidence was before the jury when it rendered its verdict, the court will not consider whether the plaintiff presented sufficient evidence to establish a prima facie case of age discrimination.

■ In response to the plaintiffs' discrimination claims, Pabst offered evidence that the plaintiffs were terminated as part of a reduction in its sales force due to declining sales and because of the company's dissatisfaction with their work. Even during a legitimate company reorganization or workforce reduction, however, a company may not choose an employee for termination because of his age. *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 81 (2d Cir.1983). At the same time, the ADEA does not place an affirmative duty on employers to afford special treatment to employees in the protected age class. *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1217 (7th Cir.1985). The key issue presently before the court is whether there is sufficient evidence from which a reasonable jury could find that Mr. Graefenhain and Mr. Miller were chosen for termination as part of Pabst's December 1981 sales force reduction because of their age.

■ First, as to Mr. Graefenhain, Pabst presented evidence that George Spencer, Mr. Graefenhain's immediate supervisor and the individual who recommended his termination, was dissatisfied with the plaintiff's performance in certain respects. Although Robert Lyons, Pabst's acting general manager of sales in December 1981, was ultimately responsible for the decision to terminate Mr. Graefenhain, the uncontested evidence is that Mr. Lyons relied on Mr. Spencer's recommendation in making the final termination decision. The record shows that Mr. Spencer and Mr. Graefenhain met on two occasions, in March and July of 1981, to discuss certain problems, most notably the latter's failure to submit the type of detailed information on pricing that Mr. Spencer sought. Mr. Spencer also told Mr. Graefenhain at these meetings that the latter's reputation at Pabst had been severely damaged. When asked by his immediate superior, Mr. Lyons, to evaluate employees in the company's western region in November 1981, Mr. Spencer rated Mr. Graefenhain as a four on a scale of one to nine and ranked him last among the

four division managers in the western region.

Mr. Spencer also wrote to Mr. Graefenhain in March 1981 to express his concern that he had received only one program plan from Mr. Graefenhain after repeated requests. On July 8, 1981, Mr. Spencer wrote to Mr. Graefenhain noting that his division was $6,000.00 over its annual budget and asking him to reevaluate his expenses. Mr. Spencer followed this letter with two additional communications over the next several months which expressed continued dissatisfaction with the budget overrun.

In May and July 1981 letters to Paul Roller, Pabst's general sales manager at the time, Mr. Spencer expressed displeasure that Mr. Graefenhain had started beer sale promotions without prior approval. Mr. Spencer also wrote to Mr. Graefenhain in August and September of 1981 to express his concern about poor sales of certain Pabst products in parts of Mr. Graefenhain's division.

Mr. Graefenhain acknowledged his problems with Mr. Spencer, testifying that Mr. Spencer gave him the "cold shoulder," and that their management philosophies and ideas about the importance of certain paperwork were divergent. Mr. Graefenhain, for example, felt that the pricing information requested by Mr. Spencer was too detailed and too time-consuming to compile. In sum, Mr. Graefenhain's own testimony supports the conclusion that Mr. Spencer was dissatisfied with his performance as Rocky Mountain division manager.

As for Mr. Miller, Pabst offered evidence that Mr. Lyons, who made the decision to terminate Mr. Miller, previously had worked with Mr. Miller when Mr. Lyons had been the director of the national account sales department of Pabst. Mr. Lyons testified that he felt Mr. Miller had been uncooperative with the national accounts department, particularly with regard to Pabst's ill-fated 1981 venture into Yankee Stadium. He also testified that he had been dissatisfied with the quality of the wholesalers in Mr. Miller's territory

and that he did not like the way the plaintiff communicated with his subordinates. Mr. Lyons further stated that he terminated Mr. Miller as part of Pabst's reduction in the sales force because he did not believe that Mr. Miller could work cooperatively with him as part of the company's sales team.

One of the plaintiffs' witnesses, Michael Matchey, Mr. Miller's immediate supervisor at Pabst, testified that Mr. Miller had complained about the national accounts department and also that Mr. Lyons had told Mr. Matchey that he was not getting the type of cooperation he wanted from Mr. Miller. Mr. Matchey further stated that Mr. Lyons placed a good deal of the blame for the Yankee Stadium affair on Mr. Miller.

 In response to the reasons advanced by the defendant for the terminations, both plaintiffs contend that Pabst's true motivation for discharging them was to cut costs as part of an effort involving replacement of highly compensated, experienced employees with inexperienced, younger employees who could be paid less. The plaintiffs claim that their terminations were part of Pabst's attempt to achieve a younger corporate image by phasing out the company's "old guard."

In *La Montagne, supra,* 750 F.2d at 1410, the court, responding to a similar argument made by the plaintiff in that case, stated: "We think it questionable whether the motivation postulated by [the plaintiff's] theory would constitute age discrimination." Even assuming that the plaintiffs' theory could support an age discrimination claim in a proper case, no reasonable jury could find that the theory applies under the evidence presented in the case at bar.

In support of their position, the plaintiffs largely rely on the testimony of Mr. Lyons who, as Pabst's acting general sales manager at the time of the terminations, ultimately was responsible for the reduction of the company's sales force. Mr. Lyons testified that in October 1981 he and another management employee had been given the

task by the president of Pabst of reducing the sales force by approximately 30% to reflect the company's declining sales. The men were given approximately five weeks to accomplish the reduction in force. Mr. Lyons acknowledged that the purpose of the reduction was to save money through the elimination of the salaries and benefits of the terminated employees. His uncontradicted testimony was that approximately 30% of the sales force, in fact, was fired in December 1981.

Based on this testimony, the plaintiffs conclude that because older, more experienced employees generally have higher salaries and greater benefits than younger, less experienced employees in comparable positions, Pabst must have terminated the plaintiffs because of their age in order to maximize its cost savings. The plaintiffs merely state in conclusory form what they sought to prove at trial.

Companies, of course, save money when they terminate employees. This fact, however, does not support the plaintiffs' age discrimination claims. *See La Montagne, supra,* 750 F.2d 1410–11. If such was the case, age discrimination could be established anytime a higher paid employee who happened to be within the protected age class was terminated while a younger, less highly paid employee was retained in a comparable position. It is not a violation of the ADEA, however, to terminate an employee in the protected age group so long as the action is not taken because of the employee's age. *See id.* at 1413.

Moreover, there is no evidence that Pabst actually saved money by terminating the plaintiffs rather than choosing younger employees for termination. The plaintiffs did not rebut evidence presented by the company that because of its severance formula, which was based on years of service, it actually cost Pabst more to terminate veteran employees such as the plaintiffs as opposed to less-experienced employees. Mr. Miller and Mr. Graefenhain received over $26,000.00 and over $8,000.00, respectively, in severance pay. It should be noted, in addition, that at the time of their termination, the pension rights of both plaintiffs had vested. This is not a case where an employee was terminated suspiciously close to the time that his pension benefits were to vest. *See Marshall v. Arlene Knitwear, Inc.,* 454 F.Supp. 715 (E.D.N.Y.1978).

The plaintiffs also point out that although the company fired approximately 30% of its sales force in December 1981, it did not present evidence that 30% of the sales positions were eliminated. The plaintiffs argue that a cover-up can be inferred from the fact that certain positions ostensibly eliminated in December 1981 subsequently were filled.

It was the plaintiffs' burden to prove age discrimination and not the company's task to establish that it did not fire the plaintiffs because of their age. Moreover, even if the company's sales force ultimately was not reduced by 30%, the plaintiffs offered no evidence either that Pabst did not intend to reduce its sales force by this amount at the time the plaintiffs were terminated or that any sales positions subsequently restored were added as part of a company plan to replace older workers with younger ones.

The plaintiffs next bring the court's attention to the evidence that 12 of the 16 division and district managers terminated in December 1981, or 75%, were in the protected age group. This figure is not statistically significant, however, because the plaintiffs failed to establish the percentage of such employees in the protected age class prior to the sales force reduction. If this latter percentage was higher than 75%, the fact that only 75% of those terminated were in the protected class actually would cut against the plaintiffs' age discrimination claims.

Mr. Miller, specifically, cites evidence that the three oldest of the five division managers in Pabst's eastern region were fired in December 1981. This evidence, standing alone, is not sufficient to create a reasonable inference of age discrimination. First, courts in employment discrimination cases almost uniformly have rejected sta-

tistical conclusions based on such small samples. *See, e.g., Soria v. Ozinga Bros., Inc.*, 704 F.2d 990, 995 (7th Cir.1983) (and cases cited therein). Moreover, the plaintiff did not offer evidence to suggest that the other two division managers terminated in the eastern region were fired because of their age. In addition, the two division managers retained both were in the protected age class; one, Mr. Sweet, was in his late forties, and the other, Mr. Allison, was in his early fifties.

As evidence that the company's stated reasons for his termination were pretextual, plaintiff Graefenhain, for his part, notes that he received annual merit pay increases for 13 consecutive years, including 1980 and 1981; that he received commendation letters from the company for nearly every year from 1968 to 1981; that in April 1981, Paul Roller, then general manager of sales at Pabst, authorized a bonus for Mr. Graefenhain; that 1981 sales in his division were up 7%, ranking him second out of the 13 Pabst sales divisions in terms of percentage increase; and, finally, that as Rocky Mountain division manager from 1972 to 1980, sales in the division increased over 300%, the highest percentage increase of any Pabst division for the same time period.

All of this evidence goes to whether Mr. Graefenhain was meeting his employer's legitimate expectations at the time he was terminated, the third element of his prima facie case. The issue presently before the court, however, is not whether the plaintiff has established his prima facie case but whether he has offered sufficient evidence from which a reasonable jury could find that Pabst's avowed reasons for terminating him were pretextual. At the prima facie stage of the trial, the plaintiff's burden is to prove his "relative *objective* qualifications" for his job. *Jayasinghe, supra*, 760 F.2d at 135 (emphasis added). Subjective job qualifications come into play only later, after the prima facie showing, when the defendant has come forward with legitimate, nondiscriminatory reasons for the challenged action. *Id.*

The court has no doubt that Mr. Graefenhain was a loyal, hardworking Pabst employee who had his supporters both within the company and the beer industry. It is also clear that he received generally excellent performance ratings prior to the time Mr. Spencer became his supervisor, in 1980. Such evidence, however, is not enough to support a finding of age discrimination.

The undisputed evidence is that Mr. Spencer was not satisfied with the way Mr. Graefenhain performed his job, particularly regarding the completion of pricing surveys; that the two men had discussed their problems several times prior to Mr. Graefenhain's termination; that the two men did not share the same management philosophy; and that Mr. Spencer ranked Mr. Graefenhain last out of the four division managers in the company's western region just one month prior to the plaintiff's termination. Mr. Graefenhain essentially acknowledged the problems between Mr. Spencer and himself.

■ Whether Mr. Spencer's assessment of Mr. Graefenhain's performance was correct was not a question for the jury to decide. The ADEA "was not intended as a vehicle for judicial review of business decisions." *Kephart, supra*, 630 F.2d at 1223. The jury only had to determine whether the defendant "in good faith *believed* plaintiff's performance to be unsatisfactory...." *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir.1982). Mr. Graefenhain may have been an excellent employee in many respects and to many people, but his performance was not satisfactory to the person that mattered, his supervisor Mr. Spencer. The ADEA is not violated when an employee is terminated because of a "personality conflict" with his supervisor. *See Ackerman v. Diamond Shamrock*, 670 F.2d 66, 70 (6th Cir.1982).

■ Mr. Graefenhain's recitation of his sales performance at Pabst and of his rankings prior to the time Mr. Spencer became his supervisor may have been sufficient to establish the third element of his prima facie case, that he met his employer's legitimate expectations, but it was not suffi-

cient to support a finding that the company's reasons for firing him were pretextual. In order to show pretext, it does not help for the plaintiff "to repeat the proof that his job performance was generally satisfactory." *La Montagne, supra,* 750 F.2d at 1414.

Mr. Miller similarly offered evidence that he had received merit pay increases for nearly all of his 32 years at Pabst, including 1980 and 1981; that his performance evaluations from 1974 to 1980 were all above average; that he received numerous letters of commendation; and that his division's sales record compared favorably with the records of most other company divisions.

■ As in the case of Mr. Graefenhain, Mr. Miller's evidence that his job performance was generally satisfactory is not sufficient to prove that the employer's stated reasons for terminating him were pretextual. There was unrefuted evidence before the jury that Mr. Lyons, the man responsible for terminating Mr. Miller, was not satisfied with certain aspects of Mr. Miller's performance, most notably his selection of distributors and his lack of cooperation with the national accounts department. Moreover, Mr. Lyons testified that he did not believe he could work cooperatively with Mr. Miller and, thus, did not want him on his sales team. Mr. Lyons also testified that in making the decision to terminate Mr. Miller he relied on Mr. Matchey's March 1980 and February 1981 evaluations of Mr. Miller in which he was ranked third and fifth, respectively, out of the five division managers in the eastern region. Mr. Miller countered with evidence that in November 1981, Mr. Matchey ranked him second out of the five division managers in his region. Mr. Lyons testified, however, that he did not agree with this ranking because he did not see a change in Mr. Miller's performance from February to November of 1981.

Mr. Miller also makes much of the fact that Mr. Lyons instituted a new form for the November 1981 performance evaluations and that Pabst was unable to locate

Mr. Matchey's November 1981 evaluation of the plaintiff. There is no evidence, however, that the new ranking system was created to discriminate or was used to discriminate against older employees. It was appropriate for Mr. Lyons, as the new Pabst sales manager, to come up with his own evaluation form. Nor does Mr. Miller's missing evaluation bear any logical relation to a finding of age discrimination. *See Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 928 (2d Cir.1981). Ultimately, of course, it was Mr. Lyons' judgment that counted as he, and not Mr. Matchey, made the decision to terminate Mr. Miller.

■ The plaintiffs next suggest in their post-judgment brief that Mr. Lyons indicated at trial that he based his termination decisions solely on sales performance; the plaintiffs then infer that because of the plaintiffs' good sales performance, Pabst's stated reasons for the terminations were pretextual. In fact, Mr. Lyons' uncontradicted testimony was that sales performance was only one of the factors that he considered in making the termination decisions. He also looked at the employees' most recent performance evaluations and spoke with Pabst supervisory personnel.

■ Both plaintiffs further contend that what they were told at the time of their termination supports a finding that the company's proffered reasons for the terminations were a cover-up for age discrimination. The plaintiffs testified that at the time of their discharge they were not informed of any personality conflicts with their supervisors or performance problems but were simply told that they were being terminated as part of the company's cutback in its sales force. There is no indication that the plaintiffs were misled about the reason for their termination or that their termination interviews were handled differently than those of other, younger employees who were terminated in December 1981. The record makes it clear that the plaintiffs were terminated as part of the company's reduction in its sales force due to sagging beer sales; that they may not have been told why they were chosen

for inclusion in this cutback does not, standing alone, suggest age discrimination or support a finding of pretext.

■ Mr. Graefenhain specifically notes that during his termination interview Mr. Spencer told him that the Rocky Mountain division was going to be eliminated and his office in Denver closed. Sometime within the next few months, David Kelly, then 29 years old, was hired to fill the position of Rocky Mountain division manager, and the Denver office remained open. The uncontroverted testimony of both Mr. Spencer and Mr. Lyons, however, was that at the time Mr. Graefenhain was terminated, the company was unsure about what it was going to do with the Rocky Mountain division. Although Pabst ultimately decided to retain the division and replace Mr. Graefenhain with a younger man, no automatic inference of age discrimination is to be deduced from this evidence; replacement of an employee within the protected age class with a younger person does not constitute age discrimination as long as the protected employee is not replaced because of his age. *La Montagne, supra,* 750 F.2d at 1413.

It is also worth noting that at the time of his termination, Mr. Graefenhain, then 47 years old, was far from the oldest employee in the western region or even the oldest of the four division managers in the region. Dick Rausch, for example, a division manager who was several years older than Mr. Graefenhain, retained his position in the December 1981 cutback.

Mr. Graefenhain also testified that Mr. Spencer refused his request that he be retained in a demoted position. If anything, this evidence reinforces Mr. Spencer's testimony that Mr. Graefenhain was selected for termination because the two men could not work well together.

■ Mr. Miller, for his part, contends that Pabst's elimination of his position was merely "gerrymandering" designed to mask the true reason for his termination: his age. Nevertheless, the uncontroverted evidence in the case shows that Mr. Miller's division was eliminated and responsibility for his former territory was divided between the two remaining eastern region division managers. The Atlantic division was subsequently reformed as the Metro division but only after Pabst merged with the Olympia Brewing Company, a year and one-half after Mr. Miller was terminated. Mr. Joseph Leuzze, then in his mid-fifties, was appointed to head the Metro division. Mr. Leuzze was appointed by Peter Breedlove, who played no role in the termination of Mr. Miller. In short, there is no evidence that Pabst's elimination and subsequent reformation of the Atlantic division were a pretext for terminating Mr. Miller because of his age.

■ Mr. Graefenhain cites the testimony of Eric Gagel who began working for Pabst in March 1983, almost a year and one-half after Mr. Graefenhain's termination. Mr. Gagel testified that while he was employed at Pabst, he had a phone conversation with Mr. Spencer, his supervisor, in which he recommended a man for hiring who was in his mid-fifties. According to Mr. Gagel's testimony, Mr. Spencer responded: "Then forget it, I don't want any more old guys like that." Mr. Gagel also testified that when he saw Mr. Spencer at a convention in March 1984, Mr. Spencer commented to him: "That's all you old Olympia people seem to be able to do is delegate and sit back." Accepting Mr. Gagel's disputed version of the statements as true, they do not support a finding that Mr. Graefenhain was terminated because of his age. There is nothing to link Mr. Spencer's comments to the termination of Mr. Graefenhain. Any connection between Mr. Spencer's long-after-the-fact comments and the plaintiff's termination would be sheer speculation.

Finally, Mr. Miller testified that Mr. Roller asked him when he was going to retire. This isolated inquiry is completely irrelevant in the present case as Mr. Roller played no part in Mr. Miller's termination, having been terminated himself several months previously.

The court has evaluated each item of evidence advanced by the plaintiffs in support of their age discrimination claims and has determined that none of them, standing alone, is sufficient to support a finding of age discrimination. The observation of the court of appeals in *La Montagne, supra,* 750 F.2d at 1413 is applicable in the matter at bar:

"We have concluded that none of the three items of evidence adduced by La Montagne is sufficient by itself to support a verdict of age discrimination. In addition, we think that their combined weight is still insufficient."

The plaintiffs' evidence, for the most part, concerns the elements of their prima facie case of age discrimination, particularly that they met Pabst's legitimate job expectations. The plaintiffs cannot show that the defendant's stated reasons for terminating them were a pretext for age discrimination merely by repeating the proof of their prima facie case. *Id.* The plaintiffs also questioned Mr. Spencer's and Mr. Lyon's judgment of their performance. The overwhelming weight of the evidence, however, was that Mr. Spencer and Mr. Lyons were genuinely dissatisfied with Mr. Graefenhain and Mr. Miller, respectively. The plaintiffs' own testimony bears out this dissatisfaction. While the judgment of Mr. Spencer and Mr. Lyons may have seemed erroneous to the jury, it was not their role to question the defendant's business judgment. *See Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979).

The court concludes that there is not sufficient evidence to support the jury's verdict in this case that Mr. Graefenhain and Mr. Miller were terminated because of their age. Stated another way, the evidence is not sufficient to support a finding that Pabst's proffered reasons for terminating the plaintiffs were a pretext for age discrimination. Accordingly, the defendant's motion for judgment notwithstanding the verdict will be granted.

Therefore, IT IS ORDERED that defendant Pabst Brewing Company's motion for judgment notwithstanding the verdict be and hereby is granted.

IT IS ALSO ORDERED that judgment shall be entered dismissing this action with prejudice as to plaintiff Gunther Graefenhain.

IT IS FURTHER ORDERED that judgment shall be entered dismissing this action with prejudice as to plaintiff Philip Miller.

IT IS FURTHER ORDERED that the motion of plaintiffs Graefenhain and Miller to amend the March 11, 1985, judgment be and hereby is dismissed.

IT IS FURTHER ORDERED that the motion of plaintiffs Graefenhain and Miller for an order fixing a supersedeas bond or, in the alternative, requiring that the judgment be placed in an escrow account be and hereby is dismissed.

IT IS FURTHER ORDERED that that portion of the March 11, 1985, judgment in this case entered in favor of plaintiffs Gunther Graefenhain and Philip Miller be and hereby is vacated.