**Gunther GRAEFENHAIN and Philip Miller, Plaintiffs-Appellants,**

v.

**PABST BREWING COMPANY, Defendant-Appellee.**

**Nos. 85–3094, 85–3095.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1986.

Decided June 26, 1987.

Frank J. Schiro, Law of Frank J. Schiro, Ltd., Chicago, Ill., Jeffrey C. Bannon, E.E. O.C., Washington, D.C., Leonard N. Flamm, Hockert & Flamm, New York City, for plaintiffs-appellants.

John R. Saap, Michael Best & Friedrich, Milwaukee, Wis., for defendant-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

This is an appeal from a judgment n.o.v. in a suit brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The plaintiffs, Gunther Graefenhain and Philip Miller, sued Pabst Brewing Co. ("Pabst") for age dis-

---

[*] The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

crimination.[1] The jury found that Pabst had willfully discriminated against both Graefenhain and Miller by terminating them on the basis of age. Following a separate trial for damages, the district court found the jury verdict unsupportable and granted Pabst's motion for a judgment n.o.v. The questions presented on this appeal are (1) whether the district court applied proper legal precepts in refusing to consider evidence of plaintiffs' superior performance as proof of pretext; (2) whether the district court misapplied the judgment n.o.v. standard by failing to view plaintiffs' evidence in its totality; and (3) whether substantial evidence supports the jury's verdict. After carefully examining the entire record in this case, we conclude that the exacting standards for granting a losing party's motion to overcome a jury verdict were not satisfied here. We therefore reverse and remand for reinstatement of the jury verdict and for reconsideration of plaintiffs' previously pending motion to amend the original judgment to award "front pay damages."

## I.

A district court's decision to enter a judgment n.o.v. must be reviewed *de novo*. *Kunzelman v. Thompson*, 799 F.2d 1172 (7th Cir.1986). A judgment n.o.v. is properly granted where the evidence presented, combined with all reasonable inferences that may be drawn from it, is insufficient to support a jury verdict when viewed in the light most favorable to the non-moving party. *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149 (7th Cir.1981); *Christie v. Foremost Insurance Co.*, 785 F.2d 584, 585 (7th Cir.1986). In reviewing a district court's decision to enter a judgment n.o.v. we do not, of course, judge the credibility of witnesses, *see Freeman v. Franzen*, 695 F.2d 485, 489 (7th Cir.1982), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983), and we do not reweigh the evidence as would a jury to find a preponderance on one side or the other. *LaMon-*

*tagne v. American Convenience Products*, 750 F.2d 1405, 1410 (7th Cir.1984). "We do however, weigh the evidence to the extent of determining whether the evidence is *substantial;* a mere scintilla of evidence will not suffice." *Id.* (emphasis in the original).

Viewed in accordance with these principles, and emphasizing this court's obligation to interpret events in a light most favorable to Graefenhain and Miller, the record discloses the following facts.

Pabst is a brewery engaged in the production and nationwide marketing of beer. Gunther Graefenhain and Philip Miller were employed by Pabst as Division Sales Managers for the Rocky Mountain and Atlantic Divisions, respectively.

Graefenhain had been employed by Pabst for fifteen years. He consistently received positive performance evaluations, annual merit pay increases, and bonuses, which continued up until 1981, the year of his discharge. As of December 1981, beer sales were up 7% for Graefenhain's division, thus ranking his division the second highest nationwide out of a total of 13 divisions. Graefenhain had received commendation letters from a number of Pabst officials over the years from 1968 through 1981. Graefenhain received his last commendation in April 1981 from the then Vice President of Pabst, Paul Roller, along with a $1,000 bonus. This was approximately six months before Pabst fired him.

Like Graefenhain, Philip Miller was a long-time employee of Pabst. At the time Miller was fired, he had been employed by Pabst for 32 years, and like Graefenhain, he had consistently received positive evaluations, letters of commendation, and bonus payments. Because of Miller's long tenure at Pabst, he was a member of what was regularly described as the "Old Guard." At the time he was fired, his supervisor's most recent evaluation ranked him second out of five division managers in the Atlantic region.

---

**1.** In addition to Graefenhain and Miller, Robert Loucks, a former Pabst employee, was also a plaintiff in the age discrimination suit. The jury, however, returned a special finding that Pabst had not violated the ADEA when it fired Loucks.

In December 1981, Pabst, faced with declining beer sales, implemented a nationwide sales force reduction, which resulted in the firing of Graefenhain and Miller. Graefenhain received notice of his termination on December 1, 1981. He was 47 years old.[2] His immediate supervisor, George Spencer, told him at that time that as a result of economic cutbacks, Pabst was closing his office.[3] Pabst never closed the Rocky Mountain office, however. Approximately two months after firing Graefenhain, Pabst installed Dave Kelly, age 29 and an employee of Pabst for the previous 4½ years, as the Rocky Mountain Division Manager. Kelly assumed the same title, the same office, the same secretary, and the same vehicle as Graefenhain.

Although at the time of discharge the only reason Spencer gave for Graefenhain's termination was economic cutbacks, Spencer later testified that Graefenhain was fired because Spencer had long been dissatisfied with Graefenhain's lack of cooperation and performance. In October 1981, Spencer had ranked Graefenhain fourth out of his four division managers, and at trial he referred to this low evaluation as the basis which led to Graefenhain's firing.

Spencer testified that his criticisms of Graefenhain included: (1) concerns about the timeliness and completeness of Graefenhain's pricing materials; (2) Graefenhain's request for approval of promotions after the promotions period had started; (3) the fact that Graefenhain's division was $6,000 over budget; and (4) sales decreases and pricing errors.

Pabst also terminated Miller in December 1981, giving economic cutbacks as the only reason. Miller was 62 at the time. Two months earlier, Miller's supervisor, Michael Matchey, ranked Miller second out of five district managers. After Miller's departure, his Atlantic Division territory was split up and taken over by two other division managers in the Eastern region. Both men were younger than Miller and had less seniority. Matchey testified at trial that Miller was a better employee than either of the two other division managers. A year and a half later, after Pabst merged with Olympia Beer, Pabst reestablished Miller's old position and filled it with a younger, less experienced person.

At trial Robert Lyons, a former Pabst Vice President, testified for Pabst that it was he who had decided to fire Miller owing to his dissatisfaction with Miller's performance. Lyons cited Matchey's relatively poor evaluations of Miller in March 1980 and February 1981 in which Matchey ranked Miller third and fifth, respectively, out of the five eastern division managers. He denied that Miller had improved sufficiently to warrant Matchey's November 1981 evaluation in which Matchey had ranked Miller second out of five. Lyons also cited inadequate cooperation by Miller with the national accounts department, particularly with regard to Pabst's ill-fated venture into Yankee Stadium.[4] Lyons further testified that he recommended that Miller be fired because he did not believe that Miller could work effectively with him as part of the company's sales team. Although Lyons placed most of the blame on Miller for the Yankee Stadium account, Matchey testified that Miller was not re-

2. Graefenhain, although only 47, was the oldest member of the Rocky Mountain Division at the time he was fired.

3. Spencer does not deny that, at the time, he attributed firing Graefenhain to economic cutbacks. Spencer also refused Graefenhain's offer to take another, lower paying job. Graefenhain contends that Spencer told him that cutbacks would force a closing of the Rocky Mountain Division. Spencer testified that at most he said the office might be closed. But since Spencer refused Graefenhain's offer to accept a demotion while not criticizing his performance, Graefenhain had every right to understand Spencer's

statement about closing the office as a firm statement of intent. For if the sole problem were budgetary in character, Spencer could have accepted Graefenhain's offer to accept a lower paying job. Hence our conclusion that Spencer led Graefenhain to believe the office would be closed.

4. The "ill-fated venture" into Yankee Stadium refers to problems that Pabst had with its Yankee Stadium account as a result of the 1981 baseball strike that led to beer spoilage in the stadium.

sponsible for the failure of that effort, and that there was nothing Miller could have done to resolve the problem.

In addition to evidence relating to their performance at Pabst, Graefenhain and Miller presented evidence that was designed to show that Pabst's reduction-in-force explanation was merely a pretext for terminating older, higher salaried employees. In other words, Graefenhain and Miller attempted to show that their termination was part of a plan to cut costs by replacing older, higher salaried employees with inexperienced, younger employees who could be paid less. In response, Pabst argued that there was an economic disincentive in selecting older employees for termination because of their eligibility for greater severance packages.

In support of their position, Graefenhain and Miller largely relied on the testimony of Lyons, who was ultimately responsible for the reduction of the company's sales force. Lyons testified that in October 1981, the President of Pabst gave Lyons and another management employee the task of reducing the sales force by 30%. The men had approximately five weeks to make the cuts. Lyons acknowledged at trial that the purpose of the reduction-in-sales-force policy was to save money through the elimination of the salaries and benefits of the terminated employees. His testimony was that approximately 30% of the sales force was in fact fired in December 1981. Graefenhain and Miller, however, attempted to counter the evidence of the 30% reduction by offering evidence to show that with the number of replacements for the fired employees, there was, in fact, no overall net reduction.

Finally, Graefenhain and Miller also attempted to show that Spencer, Graefenhain's supervisor, had an animus towards older workers. Eric Gagel, a former Pabst official, testified that Spencer had seemed interested in a particular candidate for hire until he found out how old the candidate was. When told that the candidate was in his mid-fifties, Spencer commented, "Then forget it. I don't want any more old guys like that." Spencer testified at trial that he knew it was against the law to discriminate on the basis of age. However, Spencer further stated that while he knew this at the time of trial, he did not know it at the time of Graefenhain's termination.

## II.

### A.

■ We address first the argument that the district court misapplied the standards for proving liability under the ADEA by refusing to consider evidence of plaintiffs' superior performance as proof of pretext where Pabst gave plaintiffs' poor performance as the reason for discharge. To recover under the ADEA, a plaintiff "must prove not that age was the sole factor motivating the employer to discharge him but that age was a 'determining factor,' in the sense that he would not have been discharged 'but for' his employer's motive to discriminate against him because of his age." *LaMontagne,* 750 F.2d at 1409. The plaintiff may meet this burden by presenting either direct or circumstantial evidence of discharge based on age. *Id.*

Because in most employment discrimination cases direct evidence of the employer's discriminatory motivation is unavailable or difficult to acquire, the Supreme Court has set forth an indirect method of proof that relies on presumptions and shifting burdens. The Court first employed this three-prong shifting burden method in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and outlined it again in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under this burden-shifting method, the employee first has the burden of establishing a prima facie case of age discrimination.[5] If the employee establishes a prima facie case, the burden of production shifts

---

5. A plaintiff can establish a prima facie case of age discrimination by showing that: (1) he was in the protected class; (2) he was doing his job well enough to meet his employer's legitimate expectations; (3) in spite of his performance he was discharged; and (4) the employer sought a replacement for him. *LaMontagne,* 750 F.2d at 1409.

to the employer to articulate some legitimate nondiscriminatory reason for discharge. *LaMontagne*, 750 F.2d at 1409. Once the employer produces "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," the presumption raised by the prima facie case falls away and plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were not its true reasons but were merely a pretext for discrimination. *Burdine*, 450 U.S. at 255 & n. 10, 257, 101 S.Ct. at 1095 & n. 10, 1096.[6]

As the Supreme Court has stated, the plaintiff's burden of showing pretext "merges with the ultimate burden of persuading the court that [the employee] has been the victim of intentional discrimination. [The employee] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *see also LaMontagne*, 750 F.2d at 1409–10 ("[T]he indirect method of proof ... allows victims of age discrimination to prevail without presenting *any* evidence that age was a determining factor in the employer's motivation.") (emphasis in original)). Thus, under the three-step burden shifting approach, a showing that a proffered justification is pretextual may itself be equivalent to a finding that the employer intentionally discriminated. In other words, if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent. *See Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393 (3d Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).[7]

### B.

■ Turning to the facts of the instant case, the district court's conclusion that the verdict was not supported by substantial evidence appears to be based partly on the view that evidence of superior performance is not relevant to a showing of pretext. This view is apparent in the district court's statement that:

> Mr. Graefenhain's recitation of his sales performance at Pabst and of his rankings prior to the time Mr. Spencer became his supervisor may have been sufficient to establish the third element of his prima facie case, that he met his employer's legitimate expectations, but it was not sufficient to support a finding that the company's reasons for firing him were pretextual. In order to show pretext, it does not help for the plaintiff "to repeat the proof that his job performance was generally satisfactory."

*Graefenhain v. Pabst Brewing Co.*, 620 F.Supp. 696, 703–04 (E.D.Wis.1985) (citations omitted).

---

**6.** As the Supreme Court has stated:

In saying that the presumption drops from the case, we do not imply that the trier of fact may no longer consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the [employer] destroys the legally mandated inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue whether the [employer's] explanation is pretextual.

*Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

**7.** A plaintiff employing the indirect method of proof may therefore prevail because the employer fails to advance the real reasons for its employment decision. As the third circuit recently stated:

A defendant which is less than honest in proffering its reason for discharge risks an unnecessary age discrimination verdict.... [T]he *McDonnell Douglas* test is based on the Supreme Court's assumption that "when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer ... based his decision on an impermissible condition such as [age]."

*Chipollini v. Spencer Gifts Inc.*, 814 F.2d 893, 899 (3d Cir.1987) (citations omitted).

The district court incorrectly attributes its evidentiary approach to our opinion in *LaMontagne*, 750 F.2d at 1405. Our ruling in *LaMontagne*, however, simply cannot be read as standing for the proposition that evidence of superior performance is never relevant to show pretext. In *LaMontagne*, we stated that where a company advances specific reasons for a discharge, the plaintiff's rebuttal evidence should be focused on those reasons. 750 F.2d at 1414. There the company's stated reasons were that the plaintiff had been "disrespectful of [the deciding official], criticized [the official] before sales and marketing people, ... and instructed the sales and marketing people to keep information from [the selecting official]." *LaMontagne*, 750 F.2d at 1414. The plaintiff's rebuttal evidence that his job performance was generally satisfactory did not contradict the company's stated reasons for firing him; *that* evidence could not show that the company's stated reasons for firing him were pretextual.

In this case, unlike *LaMontagne*, all of the specific reasons advanced by Pabst for selecting Graefenhain and Miller for termination related to economic cutbacks and alleged inadequacies in their job performance. Consequently, to prove pretext it was appropriate for Graefenhain and Miller to attempt to show that, despite alleged deficiencies in performance asserted by Pabst at trial, the company consistently recognized their outstanding performance. *See Christie*, 785 F.2d at 586. Here, unlike *LaMontagne*, evidence of good performance was highly relevant to the company's allegations at trial that Graefenhain and Miller were fired because of poor performance.

### C.

█ In addition to refusing to consider the evidence of Graefenhain and Miller's performance as probative of pretext, the district court opinion exhibits other errors. For example, although the court correctly stated the standard for determining whether to grant a judgment n.o.v., the court misapplied that standard by refusing to consider the plaintiffs' evidence cumula-

tively. The court's refusal to view the evidence in its totality effectively denied the plaintiffs the benefit of all of the reasonable inferences which could be drawn from that evidence.

A review of the district court's opinion reveals numerous examples of this disjunctive approach. The court stated that: (1) the fact that "the three oldest of the five division managers in Pabst's eastern region were fired ... standing alone, is not sufficient to create a reasonable inference of age discrimination"; (2) the fact that "at the time of their discharge [plaintiffs] were not informed of any personality conflicts with their supervisors or performance problems but were simply told that they were being terminated as part of the company's cutback ... does not, standing alone, suggest age discrimination or support a finding of pretext"; (3) the fact that Pabst decided to retain the Rocky Mountain division and replace Graefenhain with a younger man, without more, raises "no automatic inference of age discrimination"; (4) the comments of George Spencer that he did not "want any more old guys like that" did not support a finding of age discrimination because the comments were made after Graefenhain's termination and were not directly related to Graefenhain; (4) the fact that Graefenhain was "a loyal, hardworking Pabst employee who had supporters within the company and the beer industry" and who "received generally excellent performance ratings prior to the time Mr. Spencer became his supervisor" was "not enough to support a finding of age discrimination"; and finally, (5) the fact that Graefenhain was one of the top salesmen in the country was "not sufficient to support a finding that the company's reasons for firing him were pretextual." *Graefenhain*, 620 F.Supp. at 702–05.

In short, as the district court stated: it "evaluated each item of evidence advanced by the plaintiffs in support of their age discrimination claims and ... determined that none of them, *standing alone* [was] sufficient to support a finding of age discrimination." *Graefenhain*, 620 F.Supp. at 706 (emphasis added). This approach all but amounts to a rule that only direct evi-

dence of intent can establish age discrimination. Yet federal courts have long permitted plaintiffs to submit indirect evidence of discrimination. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 717, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1983) ("The district court erroneously thought that [the employee] was required to submit direct evidence of discriminatory intent.").

When a plaintiff uses the indirect method of proof, no one piece of evidence need support a finding of age discrimination. Age discrimination, like other forms of discrimination is often subtle and even subconscious. *LaMontagne,* 750 F.2d at 1410. "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482. As a result, plaintiffs have great difficulty in gathering information and often can present only circumstantial evidence of discriminatory motives. Therefore, to require, as did the district court, that each piece of circumstantial evidence "standing alone" be sufficient to support a finding of age discrimination is to render meaningless the indirect method of proof and invite the pretexts that can render the ADEA a nullity.

### III.

The defects in the district court's opinion do not automatically require us to reverse the judgment n.o.v. If upon an independent review, we find the evidence insufficient to support a conclusion that Pabst's reasons for terminating Graefenhain and Miller were pretextual, we must affirm. *LaMontagne,* 750 F.2d at 1410. Thus, the only remaining question is whether the evidence presented to the jury furnished a substantial basis for a verdict for the plaintiffs.

In determining whether an employer's proffered reasons for discharge were unworthy of credence under the ADEA, a plaintiff cannot argue that a defendant made a bad business judgment in choosing which employees to discharge. *See Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied,*

450 U.S. 959, 401 S.Ct. 1418, 67 L.Ed.2d 383 (1981) (the ADEA "was not intended as a vehicle for judicial review of business decisions"). Thus, we agree with the district court's statement that, even if the judgment of Graefenhain and Miller's immediate supervisors "seemed erroneous to the jury, it was not their role to second guess Pabst's business judgment." *Graefenhain,* 620 F.Supp. at 706.

As Pabst correctly points out, sections of plaintiffs' brief appear to support the claim that plaintiffs are simply asking this court to "sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). For example, with respect to Miller, plaintiffs' brief states:

> There is little doubt that Miller believed, rightly or wrongly, that Lyons, as National Accounts Manager, was making encroachments into his long-controlled territory ..., and that this encroachment precipitated a confrontation with Lyons. There is also no doubt that Lyons did not react favorably to Miller's self-protective response to the perceived threat to his "proprietary" division and job security. [Miller's] thirty two years of employment had, at least in Lyon's view, fostered a situation which made Miller not a "team man" ... or cooperative.

Plaintiffs-Appellants' Br. 41.

Similarly, with respect to Graefenhain, parts of plaintiffs' brief argue that the reports Spencer wanted Graefenhain to file were onerous and "unnecessary," and that such "procedure requirements ... did not substantively advocate ... Pabst's best interests, which was the increased sale of beer." The brief goes on to state that "Spencer was more concerned with paperwork than in promoting the sale of beer for Pabst." (Plaintiffs-Appellants' Reply Br. 11). As we have noted, these kinds of arguments are off limits in an ADEA action. A business decision need not be good or even wise. It simply has to be nondiscriminatory, for the only kind of business decision that the ADEA prohibits is a busi-

ness decision that discriminates against the aged. *See Kier v. Commercial Union Insurance Co.*, 808 F.2d 1254, 1259 (7th Cir. 1987) ("An employer can fire an employee for any reason, fair or unfair, so long as the decision to terminate is not based on age or some other protected category.").[8]

■ Had Graefenhain and Miller simply contended that Pabst used poor business judgment in firing them, they would not have alleged a violation of the ADEA. However, despite the above exceptions, the bulk of plaintiffs' brief is devoted to the argument that Pabst merely used the reduction-in-force and dissatisfaction-with-performance rationales as pretextual covers for age discrimination. In this context, consideration of performance does not amount to second-guessing a mere business judgment. As the Supreme Court stated in *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1097 "[although] the fact that a court may think that the employer misjudged the qualifications of an applicant does not in itself expose him to ... liability, ... this may be probative of whether the employer's reasons are pretexts for discrimination."

We recognize that on the pretext question there was conflicting evidence. Yet, as we noted above, our standard of review is deferential to a jury's verdict. *LaMontagne*, 750 F.2d at 1410. Our job is not to weigh the quality and quantity of Pabst's evidence against that of the plaintiffs'. We have but to determine whether substantial evidence supports the jury's finding that the reasons Pabst gave at trial for firing Miller and Graefenhain were a pretext for discrimination. We conclude that

a jury, with the evidence of record before it, could reasonably have found that the justification proffered at trial by Pabst— namely Graefenhain's and Miller's belatedly alleged poor performance—was pretextual.[9]

First, the record shows that when Spencer fired Graefenhain, the only reason he gave for the sudden termination was economic cutbacks. Spencer also said at that time that the cutbacks would result in closing of the Rocky Mountain Division. The record reveals that not only was that office not closed, but that Pabst hired a younger man to replace Graefenhain and gave him the same office, secretary, and equipment. Pabst did say at one point that the division was reduced to a "mini-division." But Pabst offered no explanation of how reducing the division was connected to firing Graefenhain. Thus, the jury could have found that Pabst did not comply with its own purported reduction-in-force policy.

Second, the jury could reasonably have perceived the attack on Miller's and Graefenhain's performance as an after-the-fact inspiration triggered by the necessity of fending off this litigation. In this connection, Pabst argued not that Miller and Graefenhain had performed unsatisfactorily in the past, but that "at the time of their termination," their performances were unsatisfactory "to the person[s] who mattered." (Defendant-Appellee's Br. 9).

Focusing on all the testimony about Graefenhain's performance over his 15 year tenure with Pabst reveals that George Spencer stands in this record as Graefenhain's sole critic. Prior to the arrival of

---

8. In this context, we note that although the ADEA does not hand federal courts a roving commission to review business judgments, the ADEA *does* create a cause of action against business decisions that merge with age discrimination. Congress enacted the ADEA precisely because many employers or younger business executives act as if they believe that there are good business reasons for discriminating against older employees. Retention of senior employees who can be replaced by younger, lower-paid persons frequently competes with other values, such as profits or conceptions of economic efficiency. The ADEA represents a choice among these values. It stands for the proposition that this is a better country for its

willingness to pay the costs for treating older employees fairly.

9. Because we have concluded that a reasonable jury could have found that Graefenhain and Miller established, under the indirect method of proof, that Pabst's reasons for firing them were pretextual, we need not reach the question whether Graefenhain and Miller have also shown age discrimination under the direct method of proof. Thus, we need not address the validity of plaintiffs' contention that Pabst engaged in a pattern of discrimination by using its reduction in force policy as a means to fire older, higher salaried employees in order to maximize cost savings.

Spencer in 1980, all of Graefenhain's former supervisors had given him excellent written evaluations and commendations. In fact, not more than six months before he was terminated, the Vice President of Pabst authorized a bonus. Moreover, at the time he was actually terminated, Graefenhain's division was ranked second in the nation in beer sales.

The principal evidence adduced by Pabst at trial regarding Graefenhain's inadequate performance was Spencer's testimony. Spencer testified that he recommended Graefenhain's termination based on his long-standing dissatisfaction with Graefenhain's performance. There were, however, several inconsistencies in Spencer's testimony about Graefenhain's deficiencies. For example, Spencer could not recall whether he had actually received the plans and report which he said Graefenhain had not produced. He also acknowledged with regard to a period of decreased sales for which he had held Graefenhain responsible, that the decline in sales coincided with the end of a media campaign over which Graefenhain had no control. Finally, with regard to the charge that Graefenhain's division was over budget, Spencer could not recall whether the whole region or just Graefenhain's division was over budget.

Thus, an examination of the trial transcript of Spencer's testimony leads us to conclude that a reasonable jury could have chosen to reject Spencer's testimony. If the jury did not believe Spencer, then Pabst's allegations regarding Graefenhain's poor performance would have had to rest on the documentary evidence of one poor evaluation, which was itself written by Spencer, and several letters also written by Spencer, which centered primarily on Graefenhain's failure to file paperwork on time. This is certainly not evidence which supports a judgment n.o.v.

The same can be said for Pabst's claim at trial that it fired Miller because it was dissatisfied with Miller's performance. Pabst's principal evidence regarding Miller's performance was the testimony of Robert Lyons, a former Pabst Vice President, and the individual who actually fired Miller. At the time he fired Miller, Lyons had been working for Pabst for one year.

Miller was 62 at the time, and had been working for Pabst for 32 years. Lyons testified that at Miller's termination meeting, he was accompanied by a Pabst employee from industrial relations to "counsel" him as to "what I can say and what I can't say." At first, Lyons refused to provide Miller with the reasons for his termination. However, after repeated requests by Miller for the specific reasons for his termination, Lyons finally told him that he was being fired due to economic cutbacks.

At trial Lyons then testified that Miller was terminated because of performance-related reasons. Specifically, Lyons testified that he did not believe Miller could, or would, work effectively with him as "part of the team" after the Yankee Stadium affair. Michael Matchey, Miller's immediate supervisor, however, testified that Miller was not responsible for the failure of the Yankee Stadium effort.

Based on the testimony of both Lyons and Matchey, a jury could also have rejected Pabst's defense of poor performance as it related to Miller. To begin with, a reasonable jury could have inferred that an industrial relations counselor accompanied Lyons to Miller's termination meeting simply because of Pabst's fear that Lyons would say something that would have had negative legal consequences for Pabst. In addition, considering Matchey's testimony and the fact that Miller was not given poor performance as a reason for termination at the time of termination, the jury could also have reasonably found that Lyon's testimony and explanations were unworthy of credence.

Graefenhain and Miller presented other evidence which, with the evidence discussed above, could have persuaded a reasonable jury that Pabst's proffered "poor performance" rationale was a contrived story that had "no basis in fact, or, if [it had] a basis in fact, ... w[as] not really [a] factor motivating discharge." *LaMontagne*, 750 F.2d at 1414–15.

Under the three-step *McDonnell Douglas* test, once Graefenhain and Miller presented a prima facie case, Pabst was required to articulate some legitimate reason for their discharge. At this point,

Pabst tried to convince the jury of its business explanations, and it failed. The jury found Graefenhain's and Miller's account of the facts credible, and refused to credit the defense that Pabst chose to mount, namely that Graefenhain's and Miller's performance was substandard. If Pabst's reasons were found pretextual, the jury might have concluded that, under the evidence, Pabst intended to and did discriminate against Graefenhain and Miller because of their age. On the record before us, we conclude that there was substantial evidence to support such a finding.

### IV.

Pabst makes one additional argument we must address: that the evidence presented by Graefenhain and Miller was insufficient to support a finding of willful discrimination. Because of its finding that Graefenhain and Miller had not shown Pabst's reasons for terminating them to be pretextual, the district court did not reach this issue. We find, however, that the record is also sufficient to support the jury's finding of willfulness.

The Supreme Court recently held that an ADEA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985). In arriving at this standard, the Court specifically rejected a willfulness standard which would require plaintiffs to show specific intent to violate the Act. *Id.* at 126 n. 19, 105 S.Ct. at 624 n. 19.

The willfulness standard in *Thurston* is consistent with the standard which we have applied in ADEA cases. *See Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149 (7th Cir.1981). In *Syvock*, we held that to prove willfulness "a plaintiff must show that the defendant's actions were knowing and voluntary and that he knew or reasonably should have known that those actions violated the ADEA." 665 F.2d at 155–56. Moreover, we noted that this standard "cannot create an incentive for the employer to remain ignorant of the law." *Id.* at 156 n. 10. Based on the record before us, we find that it is not unreasonable for the jury to have found that Pabst management knew or should have known of the ADEA's requirements and therefore that its actions were willful.

### V.

At the time of Pabst's motion for a judgment n.o.v., plaintiffs had pending a motion to amend the original judgment to award "front pay damages." However, this motion was rendered moot upon the granting of the judgment n.o.v. By reason of our reversal, plaintiffs' motion is again ripe for consideration by the district court.

### VI.

Gunther Graefenhain and Philip Miller presented sufficient evidence to support the jury's finding that Pabst's proffered explanation for discharging them was unworthy of credence. Thus, there was enough evidence to insulate this verdict from a judgment n.o.v. Accordingly, the judgment of the district court is reversed, the jury's verdict reinstated, and the case remanded for reconsideration of the plaintiffs' motion to amend the original judgment to award front pay damages.