Carol L. Springman AUSTIN, on behalf of herself and all others similarly situated, Plaintiff,

v.

CUNA MUTUAL INSURANCE SOCIETY and CUNA Mutual Group, Defendants.

No. 05–C–692–C.

United States District Court, W.D. Wisconsin.

Jan. 26, 2006.

Carol L. Springman Austin, Oregon, WI, pro se.

Thomas R. Crone, Melli, Walker, Pease & Ruhly, S.C., Madison, WI, for Defendants.

## ORDER

CRABB, District Judge.

This is a civil action for monetary relief under the Fair Labor Standards Act, 29 U.S.C. § 207(a). Plaintiff Carol Springman Austin, a former employee of defendant CUNA Mutual Insurance Society, alleges that defendant violated the statute by not paying her overtime compensation. (The parties agree that "CUNA Mutual Group" is "not an incorporated or organized legal entity" but simply a trade name "for numerous companies affiliated with CUNA Mutual Insurance Society." Compl., dkt. # 2, at ¶ 11. Therefore, I will use the term "defendant" in reference to defendant CUNA Mutual Insurance Society from this point forward.) Plaintiff seeks to prosecute this action on behalf of herself and similarly situated employees of defendant who were denied overtime pay. 29 U.S.C. § 216(b). Jurisdiction is present. 28 U.S.C. § 1331.

In an order dated November 29, 2005, I granted in part plaintiff's motion for court facilitation of notice and ordered defendant to disclose the names and addresses of its

employees that might be similarly situated to her for the purpose of this lawsuit. In addition, I gave defendant until December 15, 2005 to file objections to plaintiff's proposed notice. Defendant has filed a list of 32 individuals who fall within plaintiff's proposed class. In addition, defendant has filed a brief in opposition to plaintiff's motion for court facilitation of notice, arguing that court-facilitated notice is improper in this case and that, if the court concludes otherwise, it should limit the group of people who receive the notice and make certain alterations to its content. Plaintiff has filed a brief in reply.

For the reasons stated below, I will authorize plaintiff's sending of notice to the individuals that fall within the class described in the November 29 order. Plaintiff's allegations are sufficient to suggest that she is similarly situated to other employees who were allegedly denied overtime compensation and I believe that notifying those individuals of the existence of this lawsuit is appropriate. Plaintiff will be allowed to send the notice and consent form attached to this order, with one alteration, to the 32 individuals identified by defendant as falling into plaintiff's proposed class.

Before I address the parties' arguments, I will summarize the relevant allegations contained in plaintiff's complaint.

## ALLEGATIONS OF FACT

Plaintiff Carol Springman Austin is a resident of Oregon, Wisconsin. Defendant CUNA Mutual Insurance Society is a mutual insurance company organized under Wisconsin law with its principal place of business in Madison, Wisconsin. Defendant provides life, accident and health insurance to its policyholders, which are primarily credit unions and their members.

Plaintiff began working for defendant on July 17, 2000. Her job classification was Law Specialist II. At the time she was hired, the "Law Specialist" positions were divided into Law Specialist I, Law Specialist II, Law Specialist III, Senior Law Specialist and Managing Law Specialist. All Law Specialists worked in defendant's Office of General Counsel. Plaintiff was assigned to the Litigation Team within the Legal and Corporate Development Division of the Office of General Counsel. All Law Specialists were classified as exempt from overtime payment requirements.

In 2001, other staff in the Office of General Counsel who performed administrative assistant functions and were paid by the hour were re-titled as Executive Assistants and paid on a salary basis. No changes were made to their duties, which consisted primarily of administrative, secretarial and clerical duties for attorneys and Law Specialists.

In November 2003, defendant re-titled its Law Specialists I and II, including plaintiff, as Law Specialists I. In addition, it eliminated the Law Specialist III category and re-titled Law Specialists III as Senior Law Specialists. In 2004, the Executive Assistants on the Litigation Team were re-titled Law Specialists I but they continued to provide administrative, secretarial and clerical support to Law Specialist I's who performed case management duties and to Senior Law Specialists and attorneys. Shortly after re-titling the Executive Assistants as Law Specialists I, defendant re-titled Law Specialist I's who performed case management duties, including plaintiff, as Law Specialists I—Case Managers. In the summer of 2004, defendant eliminated the Managing Law Specialist position and re-titled the only person to hold that position as a Senior Law Specialist. Her duties did not change.

All Law Specialists performed their duties under the guidance and supervision of attorneys employed by defendant or the Managing Law Specialist. Defendant required Law Specialists to have a college degree, paralegal education or equivalent experience.

Throughout plaintiff's employment, all Law Specialists were referred to generally as "paralegals," except that those administrative support staff who were re-titled Law Specialists I in 2004 were referred to as administrative assistants and generally performed secretarial duties. Although plaintiff's formal title changed several times during her employment, her primary duties remained the same. As a case manager, she was responsible for processing and monitoring third-party lawsuits submitted by defendant's credit un-

ion policyholders. Specifically, she received case assignments, summarized case files to determine whether the case was covered by any policy issued by defendant, contacted credit unions to advise whether cases were covered, prepared coverage and denial letters using pre-existing forms, retained outside counsel from a pre-approved list, prepared retained letters using pre-existing forms, established "case reserves" by following verbal directions from supervising attorneys or the Managing Law Specialist and written guidelines, monitored and updated active cases in accordance with defendant's guidelines, reviewed and discussed outside counsel's evaluations of cases and recommendations for disposition with supervising attorneys or the Managing Law Specialist, participated in mediations, authorized settlement of cases within prescribed limits, and closed cases in defendant's database.

All other Law Specialists who managed cases performed the same job duties. The primary difference between Law Specialists who managed cases in plaintiff's classification and Law Specialists with higher classifications is that those with higher classifications handled more complex and higher value cases. Law Specialists rarely if ever interviewed witnesses, inspected property, prepared damage estimates, provided coverage for a lawsuit that had not been reviewed and approved, investigated or determined a party's liability, determined the total value of a lawsuit, testified on behalf of defendant or an insured or negotiated with opposing counsel or a third-party litigant to resolve a lawsuit. They did not have authority to manage employees or to act as a general manager, business manager or administrator. Before settling a case, plaintiff and other Law Specialists except Senior and Managing Law Specialists followed the recommendations of outside counsel when making settlement decisions or obtained authority from a superior if outside counsel's settlement recommendation exceeded the authorized limit.

In addition to the duties listed above, plaintiff provided legal research assistance as assigned. Also, in September 2003, she began preparing case summary reports for the Bond Eligibility Review Committee and summarizing and indexing briefs for the Litigation Team's knowledge bank. In 2003–2004, she was assigned responsibility for indexing and categorizing briefs, contracts and other documents for use by the entire staff in the Office of General Counsel.

On a regular basis, plaintiff worked 45–50 hours each week during 2002 and 2003 and 55–60 hours each week during 2004. When she was hired, plaintiff was told that she was considered exempt from the requirements of the Fair Labor Standards Act. She was paid a salary and received no compensation for working more than 40 hours each week. All Law Specialists, including Executive Assistants who were re-titled Law Specialists in 2004, were paid a salary and denied compensation for overtime between November 2002 until at least the summer of 2004. During the summer of 2004, defendant reviewed its jobs to insure that its employees were classified appropriately under state and federal wage laws. As a result of this review, some Law Specialists were told that they were being re-classified as non-exempt but that there was no money to pay for overtime. Plaintiff's last day of work for defendant was December 30, 2004.

## DISCUSSION

### A. Background

The Fair Labor Standards Act states that employers must pay overtime for "employment in excess of [forty hours each week] at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). Plaintiff's claim arises under 29 U.S.C. § 216(b), which provides that an employee or employees may bring an action to recover unpaid overtime compensation "for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Collective actions under the FLSA depart from normal class action practice under Fed.R.Civ.P. 23 because plaintiffs must "opt-in" in order to

be bound by a judgment. *King v. General Electric Co.*, 960 F.2d 617, 621 (7th Cir.1992). Because of the "opt-in" requirement, a representative plaintiff must be able to inform other individuals who may have similar claims that they may join his lawsuit.

■ It is well established that, in appropriate cases, district courts have the discretion to implement the "opt-in" provision by facilitating notice to potential plaintiffs in a collective action under the FLSA. *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *see also Woods v. New York Life Insurance Company*, 686 F.2d 578, 580 (7th Cir.1982) (district courts have "modest duty" to "regulate the content and distribution of the notice to potential class members"). Authorization of notice serves the broad, remedial purpose of the statute and comports with the court's interest in managing its docket. *Hoffmann–LaRoche*, 493 U.S. at 172–74, 110 S.Ct. 482.

## B. *Analytical Framework*

■ The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs. The Fair Labor Standards Act does not set out a method for determining whether potential plaintiffs are similarly situated to a representative plaintiff and the Supreme Court and the Court of Appeals for the Seventh Circuit have not provided any guidance on the question. However, numerous other federal courts have employed a two-step approach. *See generally Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir.2001) (describing two-step method and affirming district court's use of it); *Gambo v. Lucent Technologies*, No. 05 C 3701, 2005 WL 3542485 (N.D.Ill.Dec.22, 2005); *Clarke v. Convergys Customer Management Group, Inc.*, 370 F.Supp.2d 601 (S.D.Tex.2005); *Mike v. Safeco Insurance Co. of America*, 274 F.Supp.2d 216 (D.Conn.2003); *Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303 (S.D.N.Y.1998).

■ In the first step, which occurs early in the case, the plaintiff must demonstrate a reasonable basis for believing that she is similarly situated to potential class members. *Clarke*, 370 F.Supp.2d at 604; *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D.Ill.2003); *Kane v. Gage Merchandising Services, Inc.*, 138 F.Supp.2d 212, 214 (D.Mass.2001). If the plaintiff makes this showing, the court conditionally certifies a class, authorizes notice and the parties conduct discovery. *Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680, 682 (S.D.Fla. 2004). At the close of discovery, the defendant may make a motion for decertification, at which point the court examines in detail the evidence and arguments submitted by the parties on the question of similar situation. *Gambo*, 2005 WL 3542485 at *4; *Flores*, 289 F.Supp.2d at 1045. If the court finds that any of the opt-in plaintiffs are not similarly situated to the representative plaintiff, it may dismiss them without prejudice. Also, the court may decertify the entire class if none of the class members are similarly situated. *Kane*, 138 F.Supp.2d at 214. However, if the plaintiff demonstrates that the class members are similarly situated, the case proceeds to trial as a class action. *Id.* I will adopt this framework for the purpose of determining whether plaintiff should be allowed to notify potential plaintiffs of her lawsuit.

## C. *Propriety of Notice*

■ As noted above, courts may authorize the sending of notice where a plaintiff makes a colorable showing that other individuals are similarly situated. Because this case is in its early stages, plaintiff's burden is not a high one. Courts have held that plaintiffs can meet their burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y.2005) (citations and quotations omitted); *see also Gambo*, 2005 WL 3542485 at *4; *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997). Put another way, a plaintiff must demonstrate that there is some factual nexus that connects him to other potential plaintiffs

as victims of an unlawful practice. *Clarke,* 370 F.Supp.2d at 605; *Heagney v. European American Bank,* 122 F.R.D. 125, 127 (E.D.N.Y.1988). In determining whether plaintiffs have met their initial burden, courts rely on the complaint and any affidavits that have been submitted. *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1213–14 (5th Cir. 1995); *Bell,* 223 F.R.D. at 682.

■ Defendant argues that plaintiff should not be allowed to send a notice because this case is not appropriate for class treatment. It contends that "the primary question" in this case will be whether plaintiff falls within the "white collar exemption" to the FLSA's overtime compensation requirement. Dft.'s Br., dkt. # 9, at 5. It cites several cases in which courts declined to certify collective actions because liability depended on fact-specific examinations of each individual's employment and the applicability of statutory exemptions. *E.g., Mike,* 274 F.Supp.2d at 220–21; *Clausman v. Nortel Networks, Inc.,* IP 02–0400–C–M/S, 2003 WL 21314065 (S.D.Ind. May 1, 2003); *Pfaahler v. Consultants for Architects, Inc.,* No. 99 C 6700, 2000 WL 198888 (N.D.Ill. Feb.8, 2000). In addition, defendant argues that plaintiff is not similarly situated to other Law Specialists employed by defendant. It has filed several affidavits in support of this argument and devotes more than ten pages in its brief to explaining duties of Non–Litigation Team Law Specialists, Process Team Law Specialists and Law Specialists who function as case managers.

As the detail inherent in these arguments should indicate, defendant should have reserved them for a later stage in the proceedings under the FLSA. As the court noted in *Gambo,* 2005 WL 3542485 at *4, "[t]he possibility of a fact-intensive inquiry into whether all members of the putative opt-in class are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) at the second stage." Defendant's arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review. *Clarke,* 370 F.Supp.2d at 606–07; *see also Herrera v. Unified Management Corp.,* No. 99 C 5004, 2000 WL 1220973, at *2 (N.D.Ill. Aug.18, 2000) (more efficient to prune class members at later stage than to restrict class at start and expand at later stage). The proper focus at this stage is on plaintiff's submissions, which consist of the complaint and her affidavit.

Before I analyze those allegations, I must resolve one dispute. In the November 29 order, I noted that plaintiff had identified the employees to which she was similarly situated in the following terms:

> All Law Specialist employees of CUNA Mutual Insurance Society or CUNA Mutual Group employed at any time during the period November 18, 2002 forward, including those previously titled "Executive Assistant" and retitled as "Law Specialist I" in 2004, and those titled as "Law Specialist I," "Law Specialist II," "Law Specialist III," "Law Specialist–Case Manager," "Senior Law Specialist," and "Managing Law Specialist."

In compliance with the November 29 order, defendant has identified 32 individuals fitting this description and has provided their names and addresses to plaintiff. Aff. of Ronald Jenkins, dkt. # 11, at ¶ 2, exh. A. However, defendant notes that plaintiff's proposed notice and consent contains two references to a class consisting of those individuals employed as "Law Specialists or Executive Assistants on the Litigation Team" in the Office of General Counsel. In her brief, plaintiff clarifies her position by stating that she intended to define the class in such a way as to include all 32 individuals identified by defendant. She states that defendant misread the phrase "on the Litigation Team" to apply to Law Specialists and Executive Assistants when the phrase was intended to identify to apply only to Executive Assistants. She defines the class she seeks to represent as including "the Executive Assistants in the OGC Litigation Team who were retitled as 'Law Specialist I' in 2004" and "all Law Specialists (I, II, III, Case Manager, Senior, or Managing) throughout CUNA Mutual." Plt.'s Br., dkt. # 17, at 12.

After examining the allegations in plaintiff's complaint, I conclude that she has demonstrated a reasonable basis for her belief that she is similarly situated to potential class members. She alleges that she was hired as a Law Specialist II in July 2000 but was re-titled a Law Specialist I in November 2003. At the time she was hired, all Law Specialists employed by defendant were classified as exempt from overtime payment requirements. Plaintiff alleges that defendant continued not paying all Law Specialists, including the Executive Assistants in the Office of General Counsel who were re-titled Law Specialists I in November 2004, for overtime until at least the summer of 2004. Moreover, plaintiff alleges that she regularly worked more than 40 hours each week during the years 2002–2004. These allegations are sufficient to suggest that all of the individuals employed as Law Specialists were subject to a policy that violated the Fair Labor Standards Act. *Garza v. Chicago Transit Authority*, No. 00 C 0438, 2001 WL 503036, at *3 (N.D.Ill. May 8, 2001).

Although plaintiff has satisfied her burden of making a preliminary showing of a similar situation, I emphasize that the information provided by defendant could be relevant at a later stage of the proceedings. Plaintiff devotes a substantial portion of her complaint to detailing her duties as a Law Specialist–Case Manager. She does not list the job duties of the Law Specialists who were not Case Managers but she does allege that the Executive Assistants who were re-titled Law Specialists I in November 2004 performed administrative, clerical and secretarial duties. In addition, the materials submitted by defendant suggest that plaintiff's job duties may not be identical to those of other Law Specialists. The job duties of the other members of the conditional class will be relevant if defendant moves to decertify the class. *Thiessen*, 267 F.3d at 1103; *Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759, 762 (N.D.Ill.2004). However, at this stage of the litigation, plaintiff has met her burden. Therefore, I will grant her motion for court facilitation of notice. Plaintiff will be allowed to send notice to each of the 32 individuals identified by defendant in the table attached as Exhibit A to the affidavit of Ronald Jenkins. I will now turn to defendant's objections to the form of plaintiff's proposed notice.

### D. *Form and Content of Notice*

Plaintiff attached a proposed notice and consent form to her brief in support of her motion for court facilitation of notice. Defendant raised six objections to plaintiff's proposal and attached to its brief a version of plaintiff's notice and consent form that incorporates the changes it believes are warranted. Plaintiff attached a revised version of her proposed notice and consent form to her reply brief that incorporates several changes suggested by defendant and disregards others. For the reasons stated below, I will allow plaintiff to send the version of her proposed notice and consent form attached to her reply brief with one alteration.

The first objection raised by defendant concerns plaintiff's inconsistent definitions of the class she seeks to represent. Defendant argues that plaintiff defined the class differently in sections I, III and IV of her original proposed notice and consent form. Plaintiff has addressed this concern in her revised proposed notice and consent form. In section III of that document, she defines the class as

"Exectuive [sic] Assistants" in the OGC Litigation Team who were retitled as "Law Specialist I" in 2004, and employees throughout CUNA Mutual titled as "Law Specialist I," "Law Specialist II," "Law Specialist III," "Law Specialist–Case Manager," "Senior Law Specialist," and "Managing Law Specialist."

Plt.'s Reply Br., dkt. 17, ex. 1. Also, she has removed the other descriptions of the class in sections I and IV. I find plaintiff's description of the class in section III of her revised proposed notice and consent form acceptable.

Defendant's second objection is that plaintiff has used inflammatory language designed to stir up litigation. Specifically, it points to the phrases "deserve to win the lawsuit" in section II of her original proposed notice and consent and "double the amount of unpaid wages and overtime" in sections III and V of the same document. In her revised proposed notice and consent, plaintiff has replaced the phrase "whether the Law Specialists deserve to win the lawsuit" with the phrase "whether any monies are in fact

owed." I find this change appropriate. Plaintiff has retained the phrase "double the amount of unpaid wages and overtime" in her revised proposed notice and consent. She argues that it is an accurate description of the damages she is seeking. I agree with plaintiff and will not require her to strike or change this language.

Defendant's third objection is that plaintiff's proposed notice and consent form misstates the measure of damages recoverable because it implies that a salaried employee who is not exempt from the FLSA's overtime provision may recover *both* wages and the overtime premium for hours worked in excess of forty hours a week. Defendant invokes the "fluctuating workweek" provision, 29 C.F.R. § 778.114, and argues that a salaried employee whose hours fluctuate from week to week is entitled only to the overtime premium on the hours in excess of forty actually worked. *See generally Condo v. Sysco Corp.,* 1 F.3d 599 (7th Cir.1993) (discussing fluctuating workweek standard). In response, plaintiff requests that the court find as a matter of law that the fluctuating workweek standard does not apply in this case. Plaintiff's request is entirely inappropriate at this early stage of the proceedings. The applicability of the fluctuating workweek standard is a question that must be addressed at a later stage of the proceedings. However, I do not find plaintiff's characterization of the damages she seeks to be inaccurate. In section III of her revised proposed notice and consent form, plaintiff states that she seeks "double the amount of unpaid wages and overtime pay." In section V, she states that if she and the other class members win, they *may be entitled* to "up to double the amount of the unpaid wages and overtime pay." Nowhere are potential plaintiffs promised any recovery. As an expression of the damages plaintiff seeks and the relief to which potential plaintiffs might be entitled, this language is acceptable.

Defendant's fourth objection is that plaintiff did not include a statement that it disputes the allegations of her complaint in the notice and consent form. In response to this objection, plaintiff has inserted the following language into section III of her revised proposed notice and consent form: "CUNA Mutual denies that it violated the Fair Labor Standards Act." This language is sufficient to assuage defendant's concern.

Defendant's fifth objection concerns plaintiff's failure to include a statement informing potential plaintiffs that if defendant prevails, they may be liable for its costs. A number of courts have declined to require representative plaintiffs to include this warning. *Bell,* 223 F.R.D. at 683; *Herrera,* 2000 WL 1220973 at *2–3; *King v. ITT Continental Baking Co.,* No. 84 C 3410, 1986 WL 2628, at *3 (N.D.Ill. Feb.18, 1986). These courts have declined to require the inclusion of this warning because the statute is silent with respect to fee shifting for prevailing defendants and because the warning would chill participation in collective actions. I agree with the reasoning of these courts. Therefore, I will not require plaintiff to include a statement regarding defendant's costs.

Finally, defendants argue that the retaliation provision, located in section VII of the revised proposed notice and consent form, is "over the top" and actively solicits retaliation claims under the FLSA that are unrelated to the claim in the present case. As plaintiff has proposed it, section VII reads as follows:

> The law prohibits anyone from discriminating or retaliating against you for taking part in this case. If you believe you have been penalized, discriminated against, or in any way disciplined or punished, threatened, or intimidated in any way as a result of your receipt of this Notice or decision to participate in this lawsuit, you should contact us or the Clerk of the U.S. District Court for the Western District of Wisconsin immediately.

I agree that plaintiff may make her point more succinctly. Also, prospective class members should contact counsel directly rather than indirectly through the clerk of court. Therefore, plaintiff must revise section VII to read as follows:

> The law prohibits anyone from discriminating or retaliating against you for taking part in this case. If you believe you have been discriminated or retaliated against in any way as a result of your receipt of this Notice or your decision to participate in this lawsuit, you should contact us immediately.

## ORDER

IT IS ORDERED that

1. Plaintiff Carol Springman Austin may proceed with her claim under the Fair Labor Standards Act as a collective action;

2. The class is defined as follows: All Law Specialist employees of CUNA Mutual Insurance Society or CUNA Mutual Group employed at any time during the period November 18, 2002 forward, including those previously titled "Executive Assistant" and retitled as "Law Specialist I" in 2004, and those titled as "Law Specialist I," "Law Specialist II," "Law Specialist III," "Law Specialist–Case Manager," "Senior Law Specialist," and "Managing Law Specialist";

3. Plaintiff's revised proposed notice and consent form is APPROVED with the change indicated above. The court has included with this order a copy of the notice that plaintiff may send.